The next matter, number 23-1458 and number 23-1884, Boris O. Burgus v. Augustin M. Florian. At this time, would counsel for the appellant please introduce himself on the record to begin. Good morning, your honors. May it please the court, I'm here for Augustin Florian, who's in the courtroom here. My name's Christopher Donnelly. I'd like to focus my argument today on two legal errors that are briefed in arguments 1 and 2 of our brief. And rest on my brief on our arguments 3, 4, and 5. The first being that the judgment is irreconcilable with the jury's finding that Florian did not violate MUSA in connection with Burgus' 2014 purchase of the security. And it's irreconcilable with the limited rescissory relief that's provided by the statute. And the second is the court taking from the jury the factual question of whether the omission in issue was material. The first argument stands on a single undisputed fact and a single undisputed legal point. The predicate fact... Let me ask you, your contention is that materiality is to be decided by the jury, not the judge, correct? That's correct, your honor. And I can turn to that argument. Yeah, you want to start by that? Yes, yes, I would. So, counsel below submitted a jury instruction on materiality that quoted directly from the Merrim decision, which is the lead Supreme Judicial Court of Massachusetts decision on materiality. And you mean counsel for your client, correct? Correct. And that's the statute, the Massachusetts Uniform Securities Act, section 410A2, which is modeled on some of the federal statutes. And the quote from Merrim is as follows, and I'll emphasize some of the elements when I read it. The test whether a statement or omission is material is objective. There must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the total mix of information made available. And what I want to emphasize is this was an omission case, so it's not a simple affirmative misrepresentation case. There were other misrepresentations put to the jury, and they found that Dr. Florian had not misrepresented any facts. The only finding that the jury made against Dr. Florian was that he omitted to inform Vargas about a bribe that the mayor of Julliaca had requested. Omission cases are challenging, and the Supreme Court taught us in the TSC Industries v. Northway case, which is a 1976 Supreme Court case, that the standard of when a judge can take an omission from the jury is very, very limited. That case is an important case because, first of all, it's cited by Merrim, the SJC, in its leading case under 410A2. Second, it's an omission case. It's not an affirmative misrepresentation. And third, in the TSC case, as is here, the lower court, it was the circuit court, the district court in the first instance, said this is a question for the jury. The circuit court reversed and said there's no way that the omission at issue is not material and ruled in favor of the plaintiff investor, just like Judge Woodlock did here. And the Supreme Court reversed, and they said this should have been left for the jury. Counsel, I completely understand your argument on the point, but since we have to apply that principle to the specific omission here, it would be helpful to have you address how could a reasonable investor think that this omission, this particular omission, was not material, so the request for a bribe of nearly $4 million, what is the argument for a conclusion that it wasn't material? I understood, Your Honor. So the issue under the statute is to look at the omission in light of the total mix of information. So the total mix of information we cataloged in our brief, and I'm going to remind the court what that includes. And that's what makes an omission case so difficult, because it's not just, okay, was this fact true or not? Dr. Florian said these things, was it true or not? In all those, they said he didn't make any misrepresentations. He left out this thing. So what was the total mix of information? What was in the mix? It included that the company owned the land that was required for the water treatment plants. They were asked, the jury was asked, by the way, whether that was misrepresented, and they said no. There was an undisputed, very high demand for clean drinking water. The 50-year concession had been issued in 2010 and was still in force in 2012 and, in fact, at trial. Borges' counsel asked Baca, the guy who was running the company, the question. And by sometime in 2011, the company had lost the concession for Juliaca because the corrupt mayor demanded a bribe, correct? And Baca answered, we never lost it, even to this day. So there was testimony from Baca that there was a bribe, but the bribe didn't cause the concession to be lost. There were plans, there were technical documentation, there were photographs provided to Borges, and as Borges recognized, the land could be sold if the project failed. No witness testified that the company's concession to the mayor's request for a bribe was necessary to the company's overall success. Baca testified that following the mayor's request, he continued to work with other individuals in Peru to find a legal alternative on which the company could go forward with the project in Juliaca, notwithstanding the request for a bribe. And the company went on to make plans to do business in another place called Caracoto. Counsel, you're reciting facts, but this is a case before a jury, so there's issues of weight of the evidence, credibility. Whether you characterize it or suggest that this should be considered or not considered or given greater weight, that's beyond really our prerogative. So how do you convince us that there was error? Because that's precisely the point, Judge Helpe, is that Judge Woodlock prohibited the jury from deciding the issue of materiality. Counsel, I think what I'm struggling with, though, is when you just described those facts, which I read in your brief, really what those facts are showing is that there were efforts made to overcome this obstacle of the bribe and still succeed. But I guess my question for you remains, but why would a reasonable investor, any reasonable investor conclude that knowing that this obstacle exists and needs to be overcome is not something that's important to the decision whether to invest? Do you understand? You said that nobody said that it was necessarily true that the venture would now fail. They had other things they were looking at. But this is an obstacle that the company is facing. And when an investor is deciding whether to put money into a certain company, they want to know the major obstacles that the company has, it seems, is the argument made by the other side. So, again, what is your argument why a reasonable investor would not have wanted to know about this obstacle? Because it just wouldn't make any difference. Because within the total mix of information, it may be an obstacle, but there were other facts that showed it was not an obstacle that was going to be a problem, because they had moved to Caracoda. The project in Juliaca was on standby. Baca testified that Caracoda had a population of 250,000 and Juliaca had a population of 70,000. And the standard that the Supreme Court recites is only if the established omissions are so obviously important to an investor that reasonable minds cannot differ on the question of materiality is the ultimate issue of materiality appropriately resolved as a matter of law. So is it possible that any of the jurors in the jury room, had they been instructed on the law, could have said, you know what, given the total mix here, maybe it would have been nice for this fact to come out, but it wasn't necessary, it's not obvious, and the way that this should have been handled, if it was a close call, and I appreciate your Honor's question, is the judge gives it to the jury, lets the jury decide, and then if the jury, after all the evidence is in, decides that it's immaterial, then the judge can, granted judgment is a matter of law, but to have taken that from the jury, our position is given what the standard is, how high it is under TSC versus Northway, it should have been left to the jury. I would like to... Counsel, just returning to the Marum decision, and quoting from that decision, isn't this a situation where it could be said, and following up on my colleague's question, that it's difficult to imagine concerns more material to the reasonable investor, that's the language under Marum, than singular regulatory approval, that would authorize business in Juliana. Your Honor, I appreciate the question, I have answered that it's the total mix of information, and yes, the mayor requested the bribe, the bribe wasn't paid, the project was on standby, and had moved to Caracotta, a place with a higher population than Juliana, so I think reasonable jurors could say in those circumstances, it's not necessarily material, especially it's an omission. I neglected at the beginning of my argument to ask to reserve two minutes for rebuttal. Okay, I was thinking about that, so if you want to reserve those two minutes, then you have a minute and 20 seconds. So I'm going to just turn as quickly as I can to our lead argument. Counsel, can I start with a question on that argument? Because I was trying to make sure I really understood what you were arguing here, and so let me just ask you, so the security that was actually owned was the stocks, the shares in the company, and so I'm just trying to understand your argument that Mr. Bergus no longer owned the shares, the 2.5% that he bought from 2012, and how that can be squared with the fact that actually, to my understanding, what happened is he did still own those shares, he just bought more shares, so now he owned 9% after 2014. I understand the contract, the 2012 contract, may no longer be enforced because it was replaced by the 2014 contract, but the actual security, the shares, why aren't they still owned when he now owns even more of the company? And the simple answer is because he did not own them. They were canceled, so it's Trial Exhibit 11, it's in the record at page 62, the record appendix, the following language, in the contract, Bergus and the company agreed to cancel the contract on September 24, 2012, for $125,000, and it was those shares that were then, the reason they were canceled is because the shares were part of the consideration, if your honor looks at the entire contract, the consideration for the 2014 purchase of 9% of the company was $250,000 plus the shares. Right, but then he owns even more shares, that's what I'm trying to understand, he now owns 9% rather than 2.5. Yes, he owned 9% of the company, but the shares that he had purchased were canceled. The word was canceled, those shares never existed again. So he just owned a different set of, I mean, he still owns more than 2.5% of the company, so I understand the contract is canceled, but the stock, the securities, the stock, the shares, how are they canceled when he now owns more than 2.5%, that's what I'm struggling to understand. Because, again, looking at the contract, which is in the record, and then there's also the trial exhibit 32, which is the minutes of the company, shows that the shares were canceled. I understand my time is up. Yes, and you have the two minutes for rebuttal. Thank you. Please introduce yourself on the record to begin. May it please the court. Richard Gorin for Boris Burgess. One, there is no prejudicial error to overturn the jury's verdict of liability of Florian under the Massachusetts Blue Sky Act. As a matter of logic and evidence, that the verdict in Florian's favor on the 2014 investment is not inconsistent with the verdict against him on the 2012 investment. At no time before the case was submitted to the jury, did Florian ever raise any contention that somehow his liability for the 2012 investment could be conditioned for some reason on the 2014 investment. This is a baseless argument, and in all events, it has been forfeited and waived. Second, there is no plain error to overturn the dismissal of Florian's counterclaim. While the district court entered a final judgment disposing of all the claims over which it had jurisdiction, on appeal, Florian contends the dismissal was for lack of jurisdiction. Having passed on the procedural opportunities in the district court, Florian improperly seeks a second bite at the apple and asks this court to resuscitate a claim that he abandoned. This court should not do so. In all events, having failed to even address the applicable demanding standard, any claim of plain error in the dismissal of the counterclaim has been waived. Materiality. There's no clear error in the trial court's ruling that if Florian failed to tell Burgess of the demand for a $3.8 million bribe, look at the circumstances. August 2012, Florian comes to Burgess and says, I'm in this deal with my brother-in-law in Peru. We're going to provide water and sewers to folks that need it. They own the land. We have all the necessary permits, and we just need $125,000 to put the thing to bed and to sell it. And then Burgess is presented with an investment contract. Now, and the contract specified that the company has been developing for three years a comprehensive mega project, which to date is in its final stage, and that the company has gained a 50-year concession contract. And the evidence was undisputed that upon taking office, the new mayor said, no, no, no, no. We're not going to do it. And as, Judge, you said recommend, it's hard to imagine what could be more material to an investor who's told we need it. We've got all the permits. We're going to sell it and present it with a contract that says we have a 50-year concession contract. I sure as heck would want to know whether the mayor said, uh-uh, unless you pay $3.8 million, it's not proceeding. That's the question. Counsel, the one question I have for you is your use when you started talking about the materiality issue, you said it's a question of clear error, but why isn't the standard of review de novo? Because essentially what Judge Woodlock did here was grant summary judgment to your client on the materiality issue, saying in his view there was no genuine dispute of material fact about materiality. So that's normally reviewed de novo. It's not a factual finding that anyone made. So I'm just wondering if you could address that. In my brief, we cite Pavlidis v. New England Patriots Football, 737 Fed 2nd, 1227. And I would read a blurb from my, actually I'm not sure it's in the brief, but from that case. The materiality issue is a mixed question of law and fact, whose determination requires a clear error. It requires delicate assessments that are peculiarly ones for the trier of fact. In this circuit, a mixed question of law and fact is reviewable only for clear error in the absence of some showing that the court applied the wrong legal standard. Right, but the court didn't send it to the jury. The court said in his own words, I believe I'm quoting him, that he essentially said there can be no genuine dispute of fact on the issue of materiality. That's why I'm not sending it to the jury, and that's essentially a summary judgment finding. And summary judgment rulings are reviewed de novo. Without conceding the point, I would say it's a distinction without a difference, and you get the same result, respectfully. That as a matter of law, that's a fact that a reasonable investor in September 2012 would want to know. Does that answer your question, Your Honor? You think you prevail even under de novo review? Yes. There is no clear error of judgment in Judge Woodlock's prohibiting Florian from cross-examining Burgess on specific instances of collateral extrinsic conduct that is purportedly probative of his character for untruthfulness. And my last point is there is no showing of abuse of discretion in Judge Woodlock's detailing of the law and applicable factors in the award of attorney's fees. And Dr. Burgess respectfully asked the court to affirm. If the court has no questions, I am done. I have one question, just for clarification. And that's your understanding of the district court's reasoning behind dismissing the counterclaim? So the question would be, how can dismissal of Dr. Florian's counterclaim be justified here where the district court cites no clearly applicable legal authority towards dismissal? There are cases, the citation of which escapes me off the top of my head, but essentially right for any reason. And the plain fact is that the court made plain its intention to enter a final judgment. It was going to close the case, and it was going to dismiss, it was going to dispose of the case and dispose of all claims over which the court had jurisdiction. It flat out said that. Florian had numerous opportunities, whether filing a Rule 54B motion or a court order. Rule 60 motion, and say, well, gee, Judge, I would like a ruling that the dismissal of the counterclaim is without prejudice. But Florian took none of those steps. The standard this court must apply, respectfully, is plain error. And Florian makes no effort whatsoever to even address the demanding standard of plain error. Counsel, I have just a couple more questions for you. One, I think, is pretty quick. What is your position on the percentage ownership of your client right now, of the company? How many shares does he own, and what percentage of the company does he own as of today? It would be the total number of shares purchased in May 2014 minus 3,750 shares. That he assigned all of his right, title, and interest to Florian. Okay. So probably about 6.5% of the company. Is that right? Yes. I also believe that's irrelevant, respectfully. The other question I had for you is when you were making your argument about the impeachment issue, you were discussing the district court's ruling in terms of his ruling to preclude the introduction of collateral evidence. But I think the argument that was focused on by your opposing counsel is, why wasn't he permitted simply to impeach as Rule 608B permits? Just impeach during cross-examination. Ask your client, there was this decision by the medical board which you agreed to, which focused on issues of misrepresenting your credentials, your medical credentials to patients. So it is an issue having to do with truthfulness. Why couldn't he impeach in cross-examination on that line of questioning? There are two points there, I believe. One, what at trial Florian sought to do, was to introduce these findings from the Rhode Island board. That would have been impermissible under, he could not have introduced that. I believe the judge, the analysis was under Rule 403. It's technically irrelevant, but under 403 this is not really that type of conduct that would go to impeachment. Let me try to, I hope, get to your, answer your question. Florian was free under the rules when his counsel was examining him, to ask him about his opinion of Burgess' reputation for untruthfulness. He did not. But I think just focusing very specifically, and as Judge Helpe pointed out, I'm not talking about introducing the documents or what Mr. Florian could have been asked. I'm asking specifically about a line of cross-examination where Mr. Florian's lawyer could have asked your client, you're here, there's only three witnesses in this case, your testimony is important to the resolution of this case. For the jury, why should the jury believe you, I assume is how the cross-examination would have gone, when the medical board of Rhode Island has concluded that you falsely represented your medical credentials to patients. Why was the district court's ruling on that correct? First off, that question would have been objectionable as calling for hearsay in terms of what the Rhode Island board found. Second, I'm not sure completely responsive, but in fact, Florian chose not to cross-examine Burgess about his reputation for untruthfulness. The court precluded him from cross-examination about the medical board, and you can impeach with hearsay. You can ask the person the question and say, isn't it true that this happened? And how do you respond to the fact that the jury could conclude that you're not truthful? So you're permitted to do that under 608B. And I guess, again, I'm asking you, why was the district court correct to find here that that was unduly prejudicial in a trial with only three witnesses where credibility was key? Reading between the lines, it was extrinsic. This was not a case of he said, she said, what did Burgess say, and the other witness says he said something. But regardless of what he or she says, you can impeach credibility. Yes, you can. And Florian. And he said it was extrinsic, but you can ask the question, and if the answer is no, then just move on. Why wasn't that error? And go ahead and answer that. It was not error, and if it was error, it was harmless. Because, number one, contextually, it would not have mattered unless the jury determined that Baca's testimony was true. He testified in his testimony about the solicitation having occurred in April 2012. And he purportedly testified with hearsay. He testified, I told Dr. Florian in Spanish about this bribe, and I understood Dr. Florian in English to have told Dr. Burgess about the bribe, and the jury rejected that. They determined unquestionably that the solicitation occurred in August and September 2012. So if that was error, it was harmless. It had no effect on the outcome of the case. Okay. Any further questions? Thank you. And then Counsel Donnelly, you have 120 seconds for rebuttal, or two minutes. Please reintroduce yourself on the record. Charlie Donnelly back at the podium. On the 608B error, this was absolutely a he said, she said case. Florian Baca said I told it to Florian, Florian testified that he told Burgess about the bribe. Burgess denied that that happened. And it's not just one instance of the medical board. There's two instances of the medical board. The first was lying about his medical credentials, and the second was he was tagged for using expired medications. But the second incident doesn't go to truthfulness. Does it, Counsel? I'm not sure how it connects up to impeachment based on reputation for truthfulness. Expired medications is a separate issue. Well, respectfully, I would think it's fair to argue that that's essentially a lie to your patients, that you're treating them appropriately with in-date medication. But apart from that, the lie about credentials in a case where it was three witnesses all about credibility, and there was no, my trial counsel couldn't ask about credibility, because the judge had said that was off-limits. The issue of whether materiality is de novo is addressed in the Abraham v. Nagle 116 F-11 at 13 First Circuit, 1997. It's a directive verdict issue. It's de novo review, and the issue of the dismissal of the counterclaim, there is no law, it was sua sponte, and it is likely to prejudice. If the district court doesn't maintain jurisdiction of that counterclaim, it is likely not to be, there's a high risk that it won't be presented. The trial on the wage act claim, Florian's claim against Burgess is scheduled for September 30, and it's not in the case right now. And the dismissal was just wrong. There was diversity jurisdiction over that claim, and there's no basis, and the appellee hasn't cited any case law, rule, statute that permitted the court to dismiss that counterclaim.